IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES T. KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:15cv905-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.   INTRODUCTION

James T. Knight ("Plaintiff") filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, on February 23, 2011. The applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding that Plaintiff had not been under a disability and denying Plaintiff's applications. Subsequently, the Appeals Council remanded the matter to the ALJ with instructions regarding additional fact finding. A second hearing before the ALJ was held on April 30, 2014. Thereafter, the ALJ issued a second decision finding that Plaintiff was not disabled from May 1, 2008, the alleged onset of his disability, through the date of the decision. Plaintiff appealed that decision to

the Appeals Council, which rejected his request for review of the ALJ's decision.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 13); Def.'s Consent to Jurisdiction (Doc. 14).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids")[4] or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-eight years old on the date of the alleged onset of disability, and had completed his high school education. Tr. 36, 27, 52. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since May 1, 2008, the alleged onset date[.]" Tr. 19. At Step Two, the ALJ found that Plaintiff suffers from the severe impairment of "mild mental retardation." Tr. 19. In addition, the ALJ found non-severe impairments, including "hypertension, seizures and eye problems (possible cataract onset/astigmatism/mild hypertensive retinopathy)[.]" Tr. 19. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 22-23. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can sit at least four hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can frequently use his lower extremities for pushing, pulling, and the operation of foot controls. The claimant can frequently use his upper extremities for reaching overhead, pushing and pulling. The claimant can frequently climb ramps and stairs.

> The claimant cannot climb ladders, ropes, poles, or scaffolds. The claimant can frequently balance, stoop, kneel, and crouch. The claimant can occasionally crawl. The claimant can frequently work in humidity, wetness, and extreme temperatures. The claimant cannot work at unprotected heights. The claimant can frequently work while exposed to vibration. The claimant cannot operate motorized vehicles. The claimant cannot perform work activity that requires his response to rapid and/or frequent multiple demands. Changes in his work activity and/or work setting must be infrequent and gradually introduced.

Tr. 26-27. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "capable of performing past relevant work as a Grinder Laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" Tr. 35. The ALJ next found that, alternatively, even if Plaintiff's RFC precluded him from performing past relevant work, based upon the testimony of the VE, "there are other jobs that exist in significant numbers in the national economy that he is also able to perform." Tr. 36. The ALJ noted the following representative occupations: "Packager," "Janitor," and "Store Laborer." Tr. 37. Accordingly, at Step Five, the ALJ determined that Plaintiff "has not been under a disability . . . from May 1, 2008, through the date of this decision[.]" Tr. 37.

## IV.   PLAINTIFF'S ARGUMENT

Plaintiff presents one claim in his "Statement of the Issue," arguing that the ALJ erred in not finding that the Plaintiff meets or equals Listings 12.05(C) and/or 12.05(D)." Pl.'s Br. (Doc. 10) at 3.

6

## V. DISCUSSION

Plaintiff argues that the ALJ erred in failing to find that he meets or equals Listing 12.05. Specifically, Plaintiff argues that he satisfies the requirements of both Listing 12.05(C) and 12.05(D):

> The Plaintiff meets the first requirement of both Listings with a valid full scale IQ of 65. . . .
> Plaintiff meets the second requirement of the 12.05(C) Listing of having additional impairments imposing additional and significant work-related limitation of function. . . .
> Plaintiff meets the second requirement of 12.05(D) by having marked difficulties in maintaining concentration and pace as well as significant difficulties in social functioning.

Pl.'s Br. (Doc. 10) at 5-6, 12.

Listing 12.05 covers the mental disorder now described as "Intellectual Disability."[5] While Plaintiff is correct that there is a full scale IQ score of 65 in the record, and that such IQ score is relevant in assessing whether the requirements of Listings 12.05(C) and 12.05(D) are met or equaled, Plaintiff's argument gives short shrift to his predicate obligation to fully satisfy the introductory paragraph of Listing 12.05 before proceeding to consider subsections C and D of the Listing. The introductory paragraph reads as follows: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05. Although Plaintiff's IQ score, if credited as valid, creates a rebuttable presumption

---

[5]  Effective September 2, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in the Listing of Impairments.

that he manifested deficits in adaptive functioning before the age of twenty-two, the IQ score alone does not satisfy the diagnostic criteria of the introductory paragraph if the Commissioner presents sufficient evidence to rebut the presumption of deficits in adaptive functioning created by the IQ score. *See e.g., Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citations omitted) ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities.  This court, however, has recognized that a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.").  In particular, the Commissioner may rebut the presumption created by Plaintiff's IQ score by presenting evidence of Plaintiff's activities of daily living. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).

Plaintiff first presented his argument about Listing 12.05(C) at the hearing before the ALJ. *See* Tr. 87-90.  Based upon the record before the ALJ, including Plaintiff's testimony at the hearing, the ALJ indicated that he was not "inclined" to find that Plaintiff met or equaled Listing 12.05(C) due to the absence of deficits in adaptive functioning.  Tr. 90.  The ALJ's written opinion expanded upon the basis for this finding:

> Furthermore, the requirements of paragraph C are not met because the claimant does not have significant deficits in adaptive functioning.  The record shows that the claimant received some special education classes while in school.  He has never married and has lived most, if not all, his life on his parents' property.  He has never had a driver's license or driven a car because of epilepsy.

> On the other hand, the claimant completed 12[] years of school and graduated on May 25, 1979. After high school, in 1980, he began working. He has been employed most of his life with earnings above the substantial gainful activity level. For nearly seventeen years, he worked for the same company. From June 1988 to February 2005, he was employed at a fiberglass company called Arrowhead Plastic Engineering, Inc. He was hired first as a janitor; however, by 1990, he was promoted to a bow machine operator assistant and used a rivet gun. This job, according to vocational expert testimony, is semi-skilled (SVP 3) in complexity. In 2005 he was laid off. From 2006 to 2008, he worked for Bath Builders, LLC, as a grinding laborer. This job, according to vocational expert testimony, is unskilled work. When employed, the claimant had a checking account. He kept track of his money in the bank himself. No one helped him with this. He used the money in his account to pay his bills. He paid bills by money orders, which he completed himself. During the adjudicative period, the claimant has lived in a trailer alone. He has taken care of his personal needs without assistance. He has needed no reminders to take care of personal needs and grooming, to take medicines or to go places. He has prepared his own meals. He has used a stove to cook foods, such as eggs, grits, bacon and sausage. He has cleaned house, washed clothes and hung them on the line to dry, and cut grass with a riding lawn mower. He has taken care of pets. He has shopped for food and clothes. His interests have included working puzzle books, reading the Bible, playing cards, watching television, and writing friends. At the April 30, 2014, disability hearing, he reported having had no problems getting along with co-workers or supervisors when he worked. He has maintained a close relationship with his parents and has three friends whom he attends church with twice a week.

Tr. 24 (citations omitted).

Neither Listing 12.05 nor the Social Security Regulations provide a definition of precisely what is meant by "deficits in adaptive functioning." The Social Security Administration's Program Operations Manual System ("POMS") imparts that adaptive functioning refers "to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." Sec. Sec. Admin., POMS, DI 24515.056(D)(2) (2012). Likewise, the Diagnostic and Statistical

Manual of Mental Disorders ("DSM") explains that adaptive functioning broadly "refer[s] to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." American Psychological Association, *DSM-V*, p. 37. The Eleventh Circuit has favorably cited both definitions in applying Listing 12.05. *See, e.g., Schrader v. Acting Comm'r of the Soc. Sec. Admin.*, 632 F. App'x 572, 576 (11th Cir. 2015); *id.* at n.3.

As the ALJ recounted, there is substantial evidence in the record that Plaintiff is able to function independently and responsibly in accord with community standards. First, Plaintiff testified that he worked from essentially 1980 until 2007 in jobs with two different employers. *See* Tr. 58-59. The VE classified Plaintiff's work for the majority of that time as semi-skilled. Tr. 79. The fact that Plaintiff worked for nearly eighteen years, including at the semi-skilled level, supports the ALJ's determination that Plaintiff lacks deficits in adaptive functioning. *See, e.g., Hunt v. Soc. Sec. Admin., Comm'r,* 631 F. App'x 813, 816 (11th Cir. 2015) (finding that the ALJ did not err in relying upon claimant's twenty-seven-year work history, without any evidence of receiving special accommodations, in concluding that claimant's IQ score did not establish sufficient deficits in adaptive functioning). Moreover, when considered in combination with Plaintiff's work history, Plaintiff's abilities to essentially live alone (Tr. 65-66), clean up after himself (Tr. 66), cook his own meals (Tr. 66), do chores around his home and in the yard (Tr. 66, 289), look after pets (Tr. 288), handle his finances and pay his bills (Tr. 64-65), shop for necessities (Tr. 65, 290), responsibly manage his medications (Tr. 68-69, 72-73), regularly attend church

(Tr. 67), get along well with co-workers and supervisors (Tr. 67), and maintain friendships in social settings (Tr. 66-67) were properly relied upon by the ALJ in concluding that Plaintiff did not have requisite deficits in adaptive functioning for purposes of Listing 12.05. *See, e.g., Prunty v. Acting Comm'r of Soc. Sec. Admin.*, 635 F. App'x 757, 759 (11th Cir. 2015) (finding substantial evidence supported ALJ's decision that claimant lacked deficits in adaptive functioning where record established claimant's "abilities to cook simple meals, do household chores, drive a car by herself, take care of a dog, babysit children, and work part-time at McDonald's"); *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773-74 (11th Cir. 2015) (finding that the claimant's activities of daily living, including doing household chores, grocery shopping, attending church, driving, and work history including jobs at the skilled and semi-skilled level provided substantial evidence to support the ALJ's determination that the claimant did not satisfy the diagnostic criteria of Listing 12.05(C)); *Schrader*, 632 F. App'x at 577 (finding substantial evidence supporting ALJ's decision regarding lack of deficits in adaptive functioning where, although claimant "attended special education classes, she graduated high school with a regular diploma," "was able to groom herself, cook simple meals, perform household chores, drive, watch television, and babysit her nephews without any assistance from others[,]" and she "worked part-time at the laundromat"); and *Hickel v. Comm'r of Soc. Sec.*, 239 F. App'x 980, 984 (11th Cir. 2013) (finding substantial evidence supported ALJ's decision that claimant lacked deficits in adaptive functioning where evidence showed that, although claimant participated in special education classes, "she is a high school graduate, she works part

time at a nursery, she drives herself to work, she can prepare simple meals and dress and groom herself, she attends church regularly, and she socializes with friends").

To be sure, Plaintiff points to some evidence possibly suggesting deficits in adaptive functioning, including that, while he can cook on the stove, Plaintiff does not know how to operate the oven, does not drive, reads at a fifth grade level, and is easily confused. *See* Pl.'s Br. (Doc. 10) at 10-11. Plaintiff also points to Dr. Estock's assessment, in the Residual Functional Capacity Assessment, that Plaintiff has difficulty with detailed or complex tasks (Tr. 419), as well as the opinion of the consultative examiner, Dr. Kirkland, that Plaintiff "has never developed independent living skills[,]" "has pervasive and chronic lifelong deficits in communications skills and independent living skills[,]" and is "severely constricted and restricted by mild mental retardation" (Tr. 369). However, as set forth above, Plaintiff's own testimony and functional reports support the ALJ's findings with respect to Plaintiff's daily living activities. Furthermore, the record reflects that Plaintiff's lack of driving is not due to some mental incapacity for the task, but rather is because of his physician's advice based on a history of epilepsy. Tr. 290. Moreover, the ALJ provided several reasons for discounting the opinion of Dr. Kirkland, including that Plaintiff's "reports and appearance at the evaluation [with Dr. Kirkland] are inconsistent with other evidence in this case." Tr. 25. As examples, the ALJ cited Dr. Kirkland's erroneous understanding of the duration and scope of Plaintiff's work history, evidence refuting Dr. Kirkland's assessment of Plaintiff's social adjustment and ability to manage his finances, and the lack of any corroborating evidence in the record, and Plaintiff's own contrary

testimony, regarding Plaintiff's purported poor hygiene and grooming. Tr. 25. At bottom, while there is some evidence of Plaintiff's difficulties due to his mental impairment, as set forth above, there is undoubtedly substantial evidence—which, again, is only "more than a scintilla, but less than a preponderance"—supporting the ALJ's decision that Plaintiff lacks the requisite deficits in adaptive functioning to meet the introductory paragraph of Listing 12.05.[6]

Because the ALJ's determination that Plaintiff lacks deficits in adaptive functioning, as required by the introductory paragraph of Listing 12.05, is supported by substantial evidence, the ALJ's conclusion that Plaintiff's mental impairment does not meet or equal in severity Listing 12.05 is not erroneous, and the court need not proceed to consider Plaintiff's arguments about the ALJ's application of subsections (C) and (D) of Listing 12.05. Plaintiff's claim that the ALJ reversibly erred is without merit.

---

[6] The court is cognizant of the ambiguity created by the fact that the introductory paragraph of Listing 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning." In other words, while the Listing calls for "significantly subaverage general intellectual functioning," it does not expressly require any specific level of severity with respect to any deficits in adaptive functioning. Courts are grappling with the import of this ambiguity. *See, e.g., Hoyett v. Colvin*, Civ. No. 3:15-cv-344-GMB, 2016 WL 4942009, at *5-*6 (Sept. 15, 2016). Plaintiff does not appear to challenge, as a distinct claim of error apart from the arguments described herein, the ALJ's finding that Plaintiff "does not have *significant* deficits in adaptive functioning." Tr. 24. Even if Plaintiff had, the court would still find such claim without merit. First, in a recent unpublished opinion, the Eleventh Circuit appeared to endorse the proposition that a claimant must demonstrate "significant" deficits in order to satisfy the Listing. *See Hunt*, 631 F. App'x at 816 (emphasis supplied) ("Substantial evidence supports a finding that Hunt suffered no *significant* deficits—as required under the first part of Listing 12.05(C)—in adaptive functioning."). Second, the ALJ's opinion makes clear that the ALJ simply did not find the requisite deficits in adaptive functioning to satisfy Listing 12.05. As set forth herein, that decision is supported by substantial evidence.

## VI. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 7th day of December, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE